UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DEBORAH GEORGE DEVELOPMENT, )
LLC, )
 )
    Plaintiff, )
 )
        v. )    Case No. 2:18-cv-45
 )
SOUTHERN VERMONT SPRINKLER )
SERVICES, INC. and R.T. )
STEARNS, INC., )
 )
    Defendants. )

## OPINION AND ORDER

Plaintiff Deborah George Development, LLC brings this diversity action claiming Defendants are liable for improper installation and implementation of a commercial fire protection pump. Now pending before the Court are Defendants' motions for summary judgment and motions to strike Plaintiff's Statement of Disputed Facts. Plaintiff has filed a motion to amend the discovery schedule.

Plaintiff opposes summary judgment, arguing that the case requires additional discovery. The Court agrees that summary judgment at this juncture would be premature. Accordingly, as set forth more fully below, the motions for summary judgment are **denied** without prejudice, the motions to strike are **denied**, and the motion to amend the discovery schedule is **granted**.

## Factual Background

Plaintiff is a limited liability company of which Deborah George is the sole member. Ms. George lives in California, and

her company's principal office is located in Pacific Palisades, California. Defendant Southern Vermont Sprinkler Services, Inc. ("SVSS") is a Vermont corporation with a principal place of business in Brattleboro, Vermont. Defendant R.T. Stearns ("Stearns") is a New Hampshire corporation with a principal place of business in Portsmouth, New Hampshire.

Plaintiff owns a shopping center complex in Hinsdale, New Hampshire, known as the Shoppes at George's Field. The shopping center is protected by a central fire protection system. Water for the system is stored in an approximately 100,000 gallon tank underneath a below-grade fire pump house. Inside the pump house is a pump with a vertical turbine that extends down into the tank. The fire pump is powered by a motor that is bolted to the pump house's concrete floor.

In early 2015, Plaintiff determined that the fire pump needed to be replaced, and in June 2015 contracted with SVSS to install a replacement pump. SVSS in turn contracted with Defendant Stearns to purchase a pump from a manufacturer. Stearns subsequently procured a pump and sold it to SVSS, which then installed the replacement pump in Plaintiff's pump house. Installation of the replacement pump was completed on December 29, 2015.

During the installation process, SVSS needed to enlarge the opening in the floor to accommodate the replacement pump.

Plaintiff claims that both Stearns and SVSS were aware the hole would need to be enlarged. SVSS enlarged the hole by chiseling the concrete floor. In an effort to catch falling debris, SVSS created a seal by opening an umbrella under the hole, pulling it tight to the opening, and tying it off. SVSS also reportedly used a vacuum cleaner to suck out the debris.

On June 28, 2016, Stearns' technicians visited the pump house to perform a field acceptance test of the replacement pump. As part of this test, the technicians connected the new pump to a hose to test water flow. During the flow test, the pump seized up. The pump was then removed and returned to the manufacturer for analysis. Following that analysis, Stearns reported to SVSS that grit and contaminants had degraded the pump, and that the water quality issue needed to be fixed before the pump could be re-installed. The pump was repaired and delivered to SVSS.

There is a dispute of fact about responsibility for the grit in the water. SVSS claims that Plaintiff was required to have the tank and sump area inspected every five years, and failed to properly maintain the water. Plaintiff alleges that the grit was generated by the chiseling performed by SVSS around the pump access hole. Plaintiff further claims that the grit accumulated near the pump intake line and was ingested into the pump. Plaintiff denies that the accumulation of grit was caused by any lack of either maintenance or inspection of the water tank.

The Complaint brings four causes of action.  Count I, brought against both Defendants, alleges violation of the Vermont Consumer Protection Act.  The primary factual allegation in Count I is that Defendants misled Plaintiff by representing that the pump was damaged as a result of Plaintiff's failure to clean the tank.  Count II, also brought against both Defendants, alleges negligence with respect to the testing, servicing, and/or installation of the replacement pump.  Count II also alleges breach of a duty to advise Plaintiff that the tank needed to be inspected and cleaned prior to testing.  Count III claims that SVSS breached its contract by failing to properly install the new pump.  Count IV alleges that SVSS breached the covenant of good faith and fair dealing by concealing the cause of the contaminants in the tank and instead blaming Plaintiff.

With respect to damages, the Complaint states that Plaintiff has since hired a new contractor to install another fire pump at a cost of approximately $65,000.  Plaintiff has also allegedly expended time and resources to hire engineers to remove the debris and investigate the source of water contamination in the tank.  During the time period when there was no pump in place, Plaintiff was reportedly compelled to hire a "fire watch" to supervise and monitor the shopping center property.

## **Procedural Background**

Plaintiff filed its Complaint on March 12, 2018.  A

Stipulated Discovery Order provided that expert witness reports were to be submitted by October 1, 2018, and discovery closed by January 30, 2019.

Plaintiff submits that it served discovery requests in August 2018, but did not receive Defendants' responses to those requests until, at the earliest, January 8, 2019. Plaintiff further contends that it could not have been reasonably expected to depose defendants' witnesses prior to receiving and reviewing those responses.

On February 1, 2019, within approximately three weeks of sending its discovery responses, Stearns moved for summary judgment. On February 4, 2019, Plaintiff moved to amend the discovery schedule to extend the deadlines for all depositions and the Early Neutral Evaluation session. SVSS moved for summary judgment on February 8, 2019. Both Defendants have opposed amendment to the discovery schedule.

Plaintiff argues that given the lack of meaningful discovery, the summary judgment motions should be denied as premature. Plaintiff has also submitted a statement of disputed facts supported by a declaration from its expert, Dr. Timothy Morse, who contends that fault for the pump failure lies with the Defendants. Defendants object to the Morse report as unsworn, inadmissible and untimely, and have correspondingly moved to strike Plaintiff's Statement of Disputed Facts.

**Discussion**

I.  **Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

II.  **SVSS's Summary Judgment Motion**

SVSS first argues that Plaintiff cannot prove its negligence allegations without an expert. Specifically, SVSS argues that the standard of care required of a pump installer is beyond the knowledge of a lay juror, and that expert opinion is required. Because the original expert designation deadline has passed, SVSS contends that Plaintiff's expert submission is untimely and that summary judgment should be granted.

6

Assuming for the sake of argument that expert testimony is required to establish a negligence claim against SVSS, Plaintiff has disclosed an expert. On February 1, 2019, Plaintiff disclosed Dr. Morse and served his opinions on the parties. That disclosure occurred within a few weeks of receiving SVSS's discovery responses, and prior to the filing of SVSS's summary judgment motion. Dr. Morse assigns blame for the pump failure on the ingestion of grit generated by expanding the hole in the floor, and opines that such ingestion could have been avoided by either preventing the accumulation of grit or positioning the pump intake line such that it was sufficiently far away from the grit.

Because Dr. Morse is arguably qualified to speak to SVSS's alleged negligence, the essential question is whether his opinions should be disregarded due to the timing of their disclosure. As the procedural history suggests, discovery in this case is in the early stages in part because of a significant delay by Defendants in responding to Plaintiff's discovery requests. And as set forth below, Plaintiff has established sufficient grounds for amending the discovery schedule. Under a new discovery schedule, the disclosure of Dr. Morse will no longer be untimely. Accordingly, the Court will not grant summary judgment to SVSS on the ground that a timely expert opinion is lacking.

SVSS next contends that Plaintiff's negligence claim is barred by the economic loss doctrine. The economic loss doctrine generally "prohibits recovery in tort for purely economic losses." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 928 A.2d 497. The Vermont Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

*Id.* (citations and quotations omitted). In *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316, 779 A.2d 67, 71-72 (2001), the Vermont Supreme Court noted that despite the general rule, tort recovery for economic loss resulting from professional negligence may be available depending "on whether there is a duty of care independent of any contractual obligations." The court further noted that "[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." *Springfield Hydroelectric Co.*, 172 Vt. at 314, 779 A.2d at 70.

Here, the extent and type of damages suffered by Plaintiff have not been fully established in discovery. Nor has the precise nature of SVSS's legal relationship with Plaintiff and any associated legal duties. Because there are factual, and

perhaps also legal, issues to be developed, the Court declines to grant summary judgment to SVSS on Plaintiff's negligence claim at this time.

The Court likewise finds that summary judgment would be premature on Plaintiff's breach of contract and breach of covenant claims. SVSS contends that the breach of contract claim requires evidence of duty of care (the customs and practices of pump installation) and causation. SVSS again claims that such evidence must include expert testimony. SVSS similarly argues that Plaintiff's claim of breach of implied covenant of good faith and fair dealing requires an expert to establish that it caused the replacement pump to fail. As explained above, the Court will allow an extension of the expert designation deadline and therefore declines to grant summary judgment on the ground that expert opinion is lacking.

SVSS also contends that the breach of implied covenant of good faith and fair dealing must be more than a mere re-characterization of the breach of contract claim, and that the claims in this case fail that test. Under Vermont law, "[a] breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct." *Harsch Properties, inc. v. Nicholas*, 2007 VT 70, ¶ 14, 182 Vt. 196, 202, 932 A.2d 1045, 1050). Plaintiff submits that its breach of implied covenant

9

claim is based not upon the contractual act of installing the replacement pump, but instead upon SVSS's conduct after installation, and in particular SVSS's contention that Plaintiff was responsible for the tank's contamination.  At this early stage in the case, and without any directly-responsive legal argument from SVSS, the Court will allow Plaintiff's separate claim for post-installation conduct to proceed.

SVSS's final argument for summary judgment is that Plaintiff cannot establish its claim under the VCPA.  Plaintiff alleges that SVSS violated the VCPA when it blamed Plaintiff for the tank contamination.  SVSS submits that the VCPA requires reliance on an allegedly-deceptive statement, and that Plaintiff can not establish such reliance.  Plaintiff counters that SVSS is reading the VCPA too narrowly.

The VCPA prohibits "unfair methods of competition in commerce" and "unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453.  It has been held that a consumer bringing a claim under the VCPA must show three elements: "(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect the consumer's conduct or decision with regard to a product." *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 15, 177 Vt. 90, 97,

858 A.2d 238, 244 (2004) (quoting *Peabody v. P.J.'s Auto Vill.*, 153 Vt. 55 57, 569 A.2d 460, 462 (1989)).

Here, Plaintiff alleges that SVSS made deceptive statements after the failure of the replacement pump. Plaintiff then relied on those statements, and was left without a functioning fire prevention system. Plaintiff claims that if SVSS had taken responsibility for the broken pump from the outset, it would not have expended time and money trying to diagnose and rectify the problem.

SVSS argues there is no evidence that Plaintiff contracted for goods or services after relying on allegedly misleading statements. SVSS also reiterates its assertion that expert testimony is required. As evidentiary issues may be fleshed out through additional discovery, and expert testimony has been secured, the Court finds that summary judgment on the VCPA claim would again be premature.

**III. R.T. Stearns' Motion for Summary Judgment**

Stearns' motion for summary judgment mirrors that of SVSS in several respects. One distinguishing feature is its focus on the lack of a direct contract between Stearns and Plaintiff. To wit, Stearns first argues that Plaintiff cannot bring a claim under the VCPA because there was no contract between the parties, no privity between the parties, and no communications with Plaintiff prior to the failure of the pump. With regard to contractual

11

privity, however, the Vermont Supreme Court has rejected a privity requirement under the VCPA, noting that the statute allows any consumer damaged by a false or fraudulent misrepresentation or practice to sue "'the seller, solicitor *or other violator*.'" *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331, 817 A.2d 9, 13 (2002). "The statutory language contains no privity requirement, that is, no provision that the consumer can sue only the retailer and no one further up the supply chain. In general, we will not read provisions into the statute that are not present unless it is necessary in order to make the statute effective." *Id*. Accordingly, Stearns may be sued under the VCPA without a showing of either a direct contract or privity.

Stearns also argues that it cannot have made a misrepresentation under the VCPA since it had no direct communications with Plaintiff. Plaintiff responds that although it had no direct communications with Stearns, Stearns made misrepresentations to SVSS which were then relayed to Plaintiff, and upon which Plaintiff relied. Plaintiff also submits that, at the very least, it should be allowed the opportunity to depose Stearns' employees to determine the sufficiency of its VCPA claim. While the record is currently unclear as to any alleged misrepresentations, as well as the extent of any damages suffered as a result of those alleged misrepresentations, the Court agrees that Plaintiff is entitled to additional discovery.

Stearns further argues that summary judgment should be granted on Plaintiff's negligence claim because, as the seller of the pump to SVSS, it owed no duty to Plaintiff. Plaintiff alleges that, in addition to procuring a pump and delivering it to SVSS, Stearns knew that the hole in the pump house floor would need to be enlarged. Stearns also allegedly sent technicians to the pump house to perform a flow test, failed to check for grit, and continued to run the pump even after discolored water began to discharge. Because these factual allegations suggest that Plaintiff may be able to establish negligence by Stearns' employees, summary judgment will not be granted on the negligence claim at this time.

**IV. Motions to Strike Plaintiff's Statement of Facts**

Defendants have each moved to strike Plaintiff's Statement of Disputed Facts. In large part, the motions take issue with the letter submitted by Dr. Morse, arguing that the letter is unsworn, untimely, inadmissible, and does not effectively dispute Defendants' facts.

As explained previously, Dr. Morse opines that the pump failure could have been avoided if Defendants had taken certain preventive steps. Those opinions are clearly contrary to Defendants' causation theories. While his initial letter was unsworn, Plaintiff has submitted a replacement Declaration that is verified under 28 U.S.C. § 1746. Because the contents of the

Declaration are the same as the document it replaces, Defendants cannot claim prejudice.

For reasons discussed below, the Court will grant Plaintiff's motion to amend the discovery schedule. Accordingly, any question about the timeliness of Dr. Morse's designation as an expert is currently moot. Furthermore, because the motions for summary judgment are being denied as premature, the propriety of Plaintiff's Statement of Disputed Facts is not directly at issue. The motions to strike are therefore **denied**.

**V. Motion to Amend the Discovery Schedule**

Shortly after Stearns filed its summary judgment motion, and before SVSS moved for summary judgment, Plaintiff moved to amend the discovery schedule. In its motion, Plaintiff explained that Stearns had produced discovery responses on January 8, 2019, SVSS on January 18, 2019, and that additional time was needed to take depositions and engage in Early Neutral Evaluation ("ENE"). Stearns and SVSS have both vigorously opposed the motion, arguing that Plaintiff failed to properly prosecute its case.

This Court's Local Rules require a party to show "exceptional circumstances" when a motion to extend discovery is filed after the expiration of the discovery deadline. L.R. 26(a)(7). The Local Rules also require a showing of "good cause." *Id.* Similarly, the Federal Rules of Civil Procedure require "good cause" for modification of a discovery schedule,

Fed. R. Civ. P. 16(b)(4), while in general a party must show "excusable neglect" when a motion is filed after the applicable deadline has expired, Fed. R. Civ. P. 6(b).  The advisory committee notes to the Federal Rules of Civil Procedure state that because scheduling orders are set early in the case, a "good cause" standard is appropriate and the movant need not show either "manifest injustice" or "substantial hardship."  Fed. R. Civ. P. 16, advisory committee notes to 1983 amendments.

Here, Plaintiff filed its motion for amendment of the discovery schedule four days after the January 30, 2019 expiration of the deadline for completion of discovery. Plaintiff contends that its counsel contacted Defendants' attorneys in mid-January 2019 with a request to revise the existing discovery schedule.  Defendants' counsel allegedly failed to respond until after the deadline had expired and summary judgment motions were filed.

Defendants argue, and Plaintiff concedes, that all three parties failed to respond to discovery in a timely manner. Indeed, Stearns served requests to produce on Plaintiff on July 31, 2018, and Plaintiff did not respond until February 1, 2019. Nonetheless, as the summary judgment motions highlight, there are issues of both fact and law in this case that require further development, and the Second Circuit has repeatedly voiced its preference for resolving cases on the merits rather than on the

15

basis of procedural shortcomings. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("A clear preference exists for cases to be adjudicated on the merits."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998) (citing the "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities"). Accordingly, if Plaintiff can meet the applicable standards for amendment of the discovery schedule, appropriate relief will be granted.

As Defendants note, there is little case law on what constitutes an "exceptional circumstance" in discovery. "Excusable neglect" under Rule 6(b) "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 391-92 (1993). When considering whether conduct is excusable, a district court should consider "all relevant circumstances surrounding the party's omission," including "the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

"Good cause" depends on the diligence of the moving party, "meaning that the moving party must show that the schedule cannot have reasonably been met despite that party's diligence."

*Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). While diligence is the "primary consideration," the Court may also consider "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice the defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

In this case, Plaintiff's diligence may be viewed in the context of Defendants' delayed responses to discovery. When it became clear that the delays would require an extension of the discovery deadlines, Plaintiff's counsel reached out to opposing counsel but reportedly received no reply prior to the January 30, 2019 deadline. When that deadline arrived and Plaintiff received Stearns' motion for summary judgment, Plaintiff filed its motion to amend within days of the deadline's expiration.

Despite Defendants' protests to the contrary, any prejudice resulting from a discovery extension will be minimal. The parties have engaged in paper discovery, and there have been no depositions. Expert designations and full expert reports need to be exchanged and reviewed. In other words, much significant discovery remains to be performed. Defendants have moved for summary judgment, but their motions rely on an extremely limited record, and their legal arguments will no doubt be revisited in the course of the case.

Pursuant to the legal standards set forth above, the Court

17

finds that counsel acted with proper diligence when it first contacted opposing counsel to seek consent to an amendment, then filed its motion to amend within a few days of the discovery deadline. *Compare Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (denying motion to amend where the motion was filed "four months, a substantial amount of time, after the deadline in the Scheduling Order [had] passed" and it was "time for [the] case to move forward"); *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150–51 (S.D.N.Y. 2003) (denying motion to amend discovery schedule as untimely where moving party "had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion within the specified time period"). The Court also finds that Plaintiff has shown good cause for amendment, and that any neglect in failing to file the motion to amend before the discovery deadline was excusable. The motion to amend the discovery schedule is **granted**, and the parties shall submit a stipulated discovery schedule to the Court within 14 days of this Opinion and Order.

## Conclusion

For the reasons set forth above, Defendants' motions for summary judgment (ECF Nos. 27, 30) are **denied** without prejudice to re-filing, Defendants' motions to strike Plaintiff's statement of disputed facts (ECF Nos. 51, 54) are **denied**, and Plaintiff's

motion to amend the discovery schedule (ECF No. 29) is **granted.**
The parties shall submit a stipulated discovery schedule allowing
an additional 90 days for discovery.  The stipulated discovery
schedule shall be submitted to the Court within 14 days of this
Opinion and Order.

    DATED at Burlington, in the District of Vermont, this 20th
day of September, 2019.

                                      <u>/s/ William K. Sessions III</u>
                                      William K. Sessions III
                                      District Court Judge